UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
MARTINE LEONE OLLIER, a/k/a MARTINE
LEONE OLLIER MEKNI, and EMACO TRADING      Index No.:
LIMITED,                                    Date Purchased:

                          Plaintiffs,       Plaintiff designates New
                                            York County as the place of
        -against-                           trial

BARCLAY PHARMACEUTICALS LIMITED,            The basis of venue is
BURFORD CAPITAL LLC, KELLNER, HERLIHY,      diversity of citizenship
GETTY & FRIEDMAN, LLP, SEQUOR LAW,
EVERSHEDS SUTHERLAND (INTERNATIONAL)        **COMPLAINT**
LLP, and NEVILLE PAUL BYFORD,

                          Defendants.
----------------------------------------X

        The Plaintiffs complain of the Defendants, by their attorneys,

The Dweck Law Firm and respectfully allege to this Court as follows:

### INTRODUCTION AND NATURE OF THIS ACTION

        1.    This  action  seeks  an  award  of  damages  against  the

Defendants  arising  out  of  their  wrongful,  illegal  and  malicious

conduct,  to  which  they  have  subjected  the  Plaintiffs  and  their

business  associates,  customers,  suppliers,  their  banking  facilities

and  others,  who  regularly  deal  and  transact  business  with  the

Plaintiffs,  to  extensive  harassment,  abuse,  defamation  and  legal

proceedings  in  their  overzealous  efforts  to  locate  and  seize  the

assets of one Antoine Mekni. The examples of the business interference

to  which  the  Defendants  have  subjected  the  Plaintiffs,  are

pronouncements publicly, with multiple legal proceedings in the United

States of America and Europe, that the Plaintiff Martine Ollier Mekni

(Martine)  is  a  front  for  her  estranged  husband  Antoine  Mekni,

(Antoine); that the Plaintiff entity EMACO Trading Limited (Emaco) is

owned by Antoine Mekni; that despite the Plaintiffs having obtained

and furnished officially filed documents which reflect that the Plaintiff Emaco is owned and operated solely by the Plaintiff Martine, that the Plaintiff's children are hiding assets that belong to Antoine, all with the objective of helping Antoine avoid paying an outstanding judgment to Barclay.

2.    The Defendants have also attempted to intimidate, extort and force the Plaintiff Martine, who is the longtime estranged wife of Antoine, into payment of monies, purportedly due to the Defendant Barclay Pharmaceuticals Limited (Barclay) from Antoine, by circulating and publicizing negative information about Antoine to the public and to the Plaintiff Martine, her children, customers, business associates, the various Courts in Europe, the United States of America and Asia, that Antoine has been guilty of fraud, is a judgment debtor for amounts in excess of Fifteen Million British Pounds, that the Plaintiff and her companies, including Emaco, are the alter ego of Antoine, that the Plaintiff Martine has interests in multiple entities and businesses all over the world that represent monies of, and ownership by, Antoine and that the Plaintiff Martine has engaged in inappropriate conduct in order to protect and hide the assets which belong to Antoine, and with respect to which, Martine has engaged in conduct to frustrate the efforts at collection of its judgment by the Defendant Barclay.

3.    With this action, the Plaintiff seeks to enjoin the illegal and improper conduct of the Defendants, to which the Plaintiffs have been subjected, and to recover monetary damages which have been suffered by the Plaintiffs as a result of the Defendant's conduct.

THE PARTIES

4.    The Plaintiff Martine Ollier a/k/a Martine Leone Ollier
Mekni (Martine) is a resident of Lugano, Switzerland and a licensed
medical doctor in good standing.

5.    EMACO Trading Limited (EMACO) is a foreign corporation
organized and existing under the laws of Hong Kong, with an address at
20F Central Tower, 28 Queens Road, Central, Hong Kong.

6.    Upon information and belief, the Defendant Barclay
Pharmaceuticals Limited (Barclay) is a pharmaceutical company
registered in England and Wales.

7.    Upon information and belief, the Defendant Burford Capital
LLC, (Burford) is an entity organized and existing under the laws of
the United Kingdom with principal offices in New York and London,
England.

8.    Upon information and belief, Kellner, Herlihy Getty &
Friedman, LLP (Kellner Firm) is a domestic limited liability
partnership with offices within the County of New York at 470 Park
Avenue South, New York, New York.

9.    Upon information and belief, Sequor Law (Sequor) is a law
firm organized and existing under the laws of the State of Florida
with offices located at 1001 Brickell Bay Drive, Miami Florida.

10.    Upon information and belief, the Defendant Eversheds
Sutherland (International) LLP (Eversheds) is a limited liability
partnership organized and existing under the laws of the United
Kingdom, engaged as solicitors in the practice of law.

11.   Upon information and belief, the Defendant Neville Paul Byford (Byford) is a member partner of the Eversheds law firm in the United Kingdom, engaged in the practice of law as a solicitor.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over the Defendants in that some of the Defendants transact business within the State of New York, or have committed tortious acts within the United States and the State of New York, which have caused damages to the Plaintiffs, and/or some of the Defendants, upon information and belief, regularly transact business or solicit business and/or derive substantial revenue from services rendered within the State of New York.

13.   Venue is proper within the Southern District since two of the Defendants maintain offices within New York County and the wrongful conduct of the Defendants has taken place within New York County.

## THE FACTS GIVING RISE TO THIS
## ACTION COMMON TO ALL CAUSES OF ACTION

14.   The Plaintiff Martine is a medical doctor engaged in the business, among others, of the purchase and sale of pharmaceuticals, household and sundry products on an international basis.

15.   EMACO is a corporation duly organized and existing under the laws of Hong Kong, and the Plaintiff Martine is the sole shareholder, Director and Officer of Emaco.

16.   Martine was married to Antoine in October 1978, and bore two children of their marriage, Dorian and Brice who reside in Neuilly

4

sur Seine France and Hong Kong, respectively, and in or about 2009, Martine became, has been and continues to be separated from Antoine due to irreconcilable differences.

17.   At or about the time that Martine and Antoine became separated, Martine established her permanent residence and domicile in Lugano Switzerland where she has resided for several years and currently resides.

18.   Upon information and belief, and at or about the date Antoine and Martine became separated, Antoine has and still does maintain his residence at Neinlley-Sur-Seine, France.

19.   Prior to their separation, and at the date and place when Martine and Antoine became separated from each other, they divided property and home furniture at Neuilly Sur Seine and various assets with Martine conducting her business and profession, both individually and through various business entities, including Emaco, for which she furnished her own capital and was and still is the sole shareholder/member, Officer and Director, all to the complete exclusion of Antoine, except for an ownership by Antoine of a 15% interest in certain real property which pre-dates her separation from Antoine.

20.   Upon information and belief, Antoine has engaged in business practices, which resulted in a judgment or judgments rendered against him in the High Court of Justice in London in the principal sum of approximately 9 Million British Pounds in favor of Barclay(the UK judgment)

21.   Upon information and belief, since the entry of the UK judgment against Antoine, the Defendant Barclay has engaged the co-Defendants Burford, the Kellner Firm, the Sequor Firm and Eversheds, both individually and collectively, with the Defendant Byford and others acting on behalf of Barclay, to attempt to locate assets of Antoine to satisfy the judgment held by Barclay against Antoine.

22.   Upon information and belief and in furtherance of the attempts by the Defendants to pursue assets of Antoine, the Defendants or some of them, have engaged the Sequor Firm to register the UK judgment in favor of Barclay in the State of Florida on the basis of comity in order to facilitate attempts at locating and levying upon any assets owned by Antoine within the United States.

23.   Upon information and belief, the Defendant Kellner Firm, through its associate Nazy Modiri, has caused to be served approximately fifty subpoenas and documents for personal appearances for depositions, and production of documents, upon various businesses, entities and individuals within the United States, including, without limitation, upon various banking institutions, businesses or individuals, as well as the Secretary of the States of New York and Nevada, ostensibly and purportedly seeking information about assets, business dealings and transactions between the subpoenaed parties and Antoine and Martine, and various entities including all of the companies owned by Martine including Emaco.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Abuse of process)

24.    In    addition    to    the    tactics    of    the    Defendants    as
aforedescribed,  the  Defendants  have  openly  stated,  both  within  and
outside  of  any  Court  proceedings,  that  Antoine  is  the  principal  and
chief  source  of  funding  for  the  Plaintiffs  Martine  and  Emaco  to
conduct  their  business,  that  Emaco  is  a  front  for  Antoine  to  secrete
his  assets,  that  Martine  is  acting  as  a  front  for  Antoine,  that  Emaco
and  other  companies  purportedly  owned  by  Martine  are  all  fronts  for
Martine  to  insulate  Antoine  from  his  creditors  and  to  thwart  efforts
by  Barclay,  and  the  co-Defendants  acting  on  behalf  of  Barclay,  to
collect  on  its  judgment  against  Antoine.

25.    The    conduct    by    the    Defendants    as    aforedescribed    has
seriously  harmed  and  prejudiced  the  Plaintiffs,  whose  reputation  and
standing  within  the  business  and  medical  circles  and  communities  and
their  customers  have  been  damaged,  ruptured  or  cancelled.

26.    Upon  information  and  belief,  the  tactics  of  the  Defendants
include  without  limitation  the  following,  that:

> a. The Plaintiff Martine has been secreting assets of Antoine
> to  frustrate  creditors  of  Antoine  in  their  attempts  to
> collect and satisfy the judgment against him.

> b. The  Defendants  have  caused  to  be  served  multiple
> subpoenas,  approximately  50,  upon  customers  of  the
> Plaintiffs,  banks  where  the  Plaintiffs  have  maintained
> accounts  and  governmental  agencies  where  the  Plaintiffs
> and  their  companies  are  registered,  based  upon  unfounded
> beliefs,  suspicions  and  speculation  that  in  fact,  Antoine
> is the principal of these companies.

> c. The  Defendants  have  circulated  inquires  of  various
> individuals  and  entities  in  attempts  to  secure  information
> that  Antoine  has  utilized  the  Plaintiff  Martine,  and  their
> children,  to  secrete  assets  of  Antoine  with  unfounded  and

baseless accusations that Martine and their children have been complicit in assisting Antoine in secreting his assets and placing assets and monies of Antoine beyond the reach of creditors, including the Defendant Barclay.

d. The Defendants have damaged and compromised the business and professional reputation of the Plaintiffs, and interfered with the business of the Plaintiffs, by causing customers and entities dealing with the Plaintiffs, or known to the Plaintiffs, to incur expenses and expend time to address the legal issues raised by the subpoenas and other legal processes necessitated by the conduct of the Defendants.

e. The Defendants Burford, Eversheds and Byford, acting on behalf of Barclay, have initiated proceedings in the United Kingdom, France and Switzerland and the United States, against the Plaintiffs by seeking a Worldwide Freezing Order (WFO) against the Plaintiffs based upon unfounded allegations and speculation that assets beneficially owned by Antoine are held by the Plaintiffs, all of which are untrue, with the exception of a minority 15% interest in an entity which is otherwise independently owned by Martine and which pre-dates any judgment against Antoine.

f. The Defendants Burford, Eversheds and Byford, acting on behalf of Barclay, have, without foundation or facts, falsely alleged in sworn Court documents publicly filed, including with the Supreme Court in New York, that "Antoine Mekni involved his wife and two adult sons in his business affairs…through "numerous other companies located in so-called offshore jurisdictions".

g. The Defendants Burford, Eversheds and Byford, acting on behalf of Barclay, have alleged that Antoine had "companies under his control with at least one bank account in respect of which Antoine Mekni and/or his wife and/or their sons possess or possessed a right of disposal and/or a signature". In truth and fact the Plaintiff Martine has no financial dealings with or assets of Antoine with the exception of the 15% interest owned by Antoine in an entity otherwise owned by Martine.

h. The Defendants, all acting on behalf of Barclay, have falsely stated in public submissions to the High Court of Justice in the United Kingdom that Antoine has assets within the United States, which are believed to be ultimately owned by Antoine "held in the names of Antoine Mekni's wife…".

8

i. The Defendants Burford, Eversheds and Byford, all acting on behalf of Barclay, have falsely alleged in documents filed in the High Court of Justice in the United Kingdom that an entity called SCI Le Montfort, which owns property in France, is "apparently owned by Antoine and Martine" was acquired only by Antoine, and that Martine holds her interest as nominee for Antoine.   In truth and fact, Martine is the *bona fide* owner of an 85% interest in SCI Le Montfort, and the 15% interest of Antoine long predates any judgment by the Defendant Barclay against Antoine.

j. The Defendants Burford, Eversheds and Byford acting on behalf of Barclay, have falsely alleged, without foundation, in documents filed in the High Court of Justice in the United Kingdom that companies including the plaintiff Emaco are "believed" to be ultimately owned by Antoine.

k. The Defendants Burford, Eversheds and Byford, acting on behalf of Barclay, have alleged in filings, based purely on surmise and speculation, with the High Court of Justice in the United Kingdom, that they have investigated the financial dealings of the Plaintiff Emaco and that "So far as Burford are aware" without any disclosed basis or evidence to support the same, ...... "Martine does not have any business interests which would justify the receipts of such large sums of money other than those generated by Antoine Mekni" and that ...... it "appears" that "Martine has been used to hold assets and act on behalf of Antoine" and that it "seems likely that all of these companies" (referring to Emaco)as part of this group "are in fact owned by and/or operated by Antoine".

l. The Defendants Burford, Eversheds and Byford, acting on behalf of Barclay, have elected to disregard a judgment of the Paris High Court in May 2010, that SCI Le Montfort was owned 85% by Martine, by unsupported and unfounded allegations in documents filed in the High Court of Justice in the United Kingdom, that "it appears in fact that the reality is that Antoine owns all of SCI Le Montfort and that Martine is and always has been his nominee or, in English terms, has held the shares on trust for Antoine Mekni.

m. The Defendants Burford, Eversheds and Byford acting on behalf of Barclay have alleged in filings with the High Court of Justice in the United Kingdom, without documentation or evidence, that "Martine Mekni appears from the research undertaken by Burford, to have put no monies into the acquisition and development of the properties, it seems the reality is that SCI Le Montfort that owns the property is really Antoine Mekni's company.

SCI Le Montfort is accordingly another example of Antoine Mekni involving a member of his family, in this case, his wife, Martine Mekni, in a scheme to hide assets.

n. The Defendant Kellner Firm, acting for itself and on behalf of the Sequor Firm, which, in turn, is acting on behalf, or at the direction of, the Defendants Barclay, Burford, Eversheds and Byford, has issued multiple subpoenas within the State of New York and elsewhere, upon customers of the Plaintiffs and governmental authorities, without basis, evidence or foundation, but only upon the speculation that these entities possess assets of Antoine, but which in fact have diminished, ruptured and compromised the business relations between the Plaintiffs and their customers, including, without limitation, customers in New York, So Fresh and So Clean, 6 Two Apparel Group and Samez International, who have been compelled to expend time and monies to respond to said subpoenas, including for legal representation, all as a result of pure speculation by the Defendants that the Plaintiffs are secreting assets of Antoine.

o. The Defendants Burford, Eversheds and Byford acting on behalf of Barclay, wrongfully, maliciously and intentionally sought an ex-parte WFO against the Plaintiff Martine from the High Court of Justice in the United Kingdom, which prohibits the Plaintiff Martine from using her name as above stated, to be an alias based upon a groundless assertion by the Defendants that such prohibition is necessary to avoidance of doubt, all with respect to said WFO, which freezes the shareholdings of Martine in SCI Le Montfort and properties owned by said entity; freezes the shareholdings of Martine in her solely owned entity Emaco (Hong Kong) and accounts of said entity with Credit Suisse (in Switzerland) and Hang Sang Bank in Hong Kong, and shares in other entities in which the Plaintiff Martine purportedly owns.

27.   Upon information and belief, the conduct of the Defendants, as aforedescribed, has been intentional, abrasive, vicious, and malicious, is not supported or justified by hard evidence, but has been engaged in based purely upon speculation, undocumented assumptions, inferences, unsupported appearances, opinions and beliefs, but without any real legal foundation or basis, and has caused damages of a monetary nature to the Plaintiff's good name and

reputation within her business and personally, as a physician, damaged the credit and credit standing of said Plaintiff within the financial and the pharmaceutical communities.

28.  Upon information and belief, the service of over 50 subpoenas to the Plaintiff's customers, banks and governmental agencies in the United States was done intentionally to harm the Plaintiffs, without excuse or justification, in order to intimidate the Plaintiff Martine and compel her to disclose the confidential and protected information about her businesses and customers with the expectation that such information would lead them to assets of Antoine and which the Defendants believe is in the possession and knowledge of Martine.

29.  Such use of the legal processes above described are a perversion of the legal processes and constitute a perverted manner by the Defendants to obtain their collateral objective of locating and seizing assets of Antoine by exerting economic pressure upon the Plaintiffs.

30.  The wrongful conduct of the Defendants was compounded by the Kellner Firm after it received sworn statements from the Plaintiff that she possessed no property or assets of Antoine and had no financial dealings, or monies, or property, of Antoine other than that he owns a 15% interest in SCI Le Montfort for some 20 years which was controlled by an agreement and the by-laws of SCI Le Montfort.

31.  By virtue of all of the foregoing, the Plaintiffs have been seriously damaged in their business and other activities and seek a

judgment of this Court for money damages of Fifty Million ($50,000,000.00) Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION
### (FOR TORTIOUS INTERFERENCE)

32.  The Plaintiffs repeat and reallege each and every allegation of Paragraphs of this Complaint numbered "1" through "31", inclusive, with the same force and effect as though more fully set forth at length herein.

33.  The business of the Plaintiff Emaco is of an international nature, wherein it engages in the purchase of, and resale of, household and consumer goods such as perfumes, soaps, cosmetics, drugs and sundry items which are sold internationally to wholesalers and retailers.

34.  The Plaintiff Martine is the sole owner of the shares of Emaco and its sole shareholder, director and officer.

35.  Martine enjoys an excellent reputation among her customers and suppliers based upon her honesty, integrity, the furnishing of quality merchandise, competitive pricing, reliability and maintaining of confidentiality of the identity of her customers and pricing of the merchandise offered by her for sale.

36.  Martine maintains both supply continuity for merchandise, and contractual obligations, with the suppliers and purchasers of the products she sells and offers for sale through Emaco, as a result of which, Martine and Emaco have developed and maintain an excellent reputation in the marketplace.

37. As a result of the overzealous, and illegal efforts and tactics of the Defendants in publicizing the criminal and civil conduct and activities of Antoine, from whom Martine has been separated since 2009, and the efforts of the Defendants to locate assets of Antoine to satisfy a judgment against him, customers of Martine and Emaco have been inundated and bombarded with subpoenas, judicial processes, inquires, requests and other demands for information, which concerns the business of the Plaintiffs, which have no relation to the assets, or discovery of the assets of Antoine, not to obtain material information to legitimately locate assets of Antoine, but to attempt to verify whether Antoine has assets with said persons and entities, have served and publicized negative information about the Plaintiff Martine and some of her own entities, along with descriptions of fraudulent conduct of Antoine, with references in said documents that Antoine is a fugitive, a fraudster, and is secreting assets with Martine and Emaco to avoid payment to, and seizure of the same, by Barclay.

38. The Plaintiffs have been damaged by such conduct of the Defendants which constitutes tortious interference with the Plaintiff's business relations and contracts with their customers and which has caused damages to the Plaintiff's contractual and business relationships all to the Plaintiff's damages in a sum of not less than Ten Million ($10,000,000.00) Dollars.

## AS AND FOR A THIRD CAUSE OF ACTION
### (FOR DAMAGE TO PLAINTIFF'S REPUTATION BY TRADE LIBEL)

39.   The  Plaintiffs  repeat  and  reallege  each  and  every allegation of Paragraphs of this Complaint numbered "1" through "31", inclusive, and Paragraphs "33 through 37", inclusive, with the same force and effect as though more fully set forth at length herein.

40.   After the Defendant Kellner Firm caused a subpoena to be served upon a New York customer of Emaco named So Fresh & So Clean LLC, which sought information about payments by it to Emaco, the Plaintiff Emaco moved to quash said subpoena upon the grounds that, among other things, the subpoena sought information that was utterly irrelevant to any such inquiry and efforts to discover assets of Antoine, and that the futility of the process to uncover any assets of Antoine Mekni, a judgment debtor, was that it was obvious that any documents or testimony sought would not uncover anything relevant to the Defendants' attempts to locate assets of Antoine as a judgment debtor.

41.   Instead   of   addressing   the   circumstances   or   reasons disclosure from So Fresh & So Clean was sought, the subpoena was silent as to the basis for the discovery or production of documents, other than to seek documents relating to monies paid to Emaco Trading Ltd. and transactions with Antoine Mekni and thirty separately listed individuals or entities named in said subpoena.

42.   Based  upon  the  confidentiality  and  highly  competitive nature of the business of Emaco, and So Fresh & So Clean, and the

dealings with Emaco, a special proceeding was commenced in the Supreme Court of New York to quash the subpoenas.

43. Instead of addressing the merits of the subpoena, upon submission of opposition to the Plaintiff's request to quash the same, the Kellner firm acting for itself and the co-Defendants submitted highly inflammatory matter which was filed and became a public record, which was accessible to the public, with very detailed and specific inflammatory and prejudicial statements that the Defendants were seeking information so as to locate assets of Antoine Mekni, a judgment debtor and that the Plaintiff, Martine, was acting as a front for Antoine Mekni, was secreting assets of Antoine Mekni, that Emaco was a company really owned by Antoine Mekni, that Antoine Mekni, the husband of Martine Mekni, was a fraudster, and that Martine and Antoine the fraudster were acting in concert to defeat and interfere with the efforts of the Defendants in their attempts to collect the monies due under the judgment outstanding against Antoine Mekni.

44. As a result of the publication of the highly inflammatory statements in opposition to the Plaintiff's request to quash the subpoenas, the Plaintiff Martine Mekni has suffered losses of business, loss of trust in her by her customers, loss of reputation in the market by virtue of the direct reference to humiliation which emanated from the references to her husband, from whom she has been estranged and separated for over eight years, all as contained in an Affidavit by Neville Paul Byford, an English solicitor, submitted publicly in September 2017 to the High Court of Justice in the United Kingdom.

45.   The statements submitted by the Kellner Firm in opposition to the Plaintiff's motion to quash the subpoenas, that Antoine Mekni was a fraudster, guilty of civil and criminal conduct, were irrelevant and were not germane to the request to quash the subpoenas, and were made intentionally to intimidate and harm the Plaintiffs and to prejudice the Judge before whom the proceeding to suppress was argued and to hold the Plaintiffs, especially Martine Mekni – a licensed physician up to shame and ridicule.

46.   The statements published by the Kellner Firm acting on behalf and direction of the co-Defendants, in opposition to the proceeding to quash were false, defamatory and libelous.

47.   By the said publication, the Defendants intended to, and did, circulate and convey false, malicious, scandalous, defamatory and libelous statements, as above described, meaning and giving the impression that the Plaintiff was connected with, and had participated in, the said attempts to evade asset discovery proceedings against Antoine Mekni, and had engaged in such acts which none but a person of immoral and degrading character would do, and the publication of the criminal and civil conduct of Antoine Mekni, in connection with the opposition to the motion to quash, was malicious, and without proper basis or cause, and said statements were intended to injure the Plaintiff and hold her up as a person of bad character and charged her with being complicit and conveyed the impression that she had been connected with, and participated in, the civil and criminal fraudulent conduct by Antoine Mekni as set forth in said opposing papers, that she had been guilty of participating in said conduct which held her up

16

to shame and disgraced her in the eyes of her business associates and customers.

48.   The statements published by the Kellner Firm acting on behalf of the co-Defendants, tended to disparage and disgrace the Plaintiffs and injure their good names and reputations as honorable, ethical and honest in their businesses, and to the reputation of Plaintiff Martine Mekni as a medical doctor in good standing and expose the Plaintiffs to public hatred, scorn, contempt and shame.

49.   By reason of all of the foregoing, the Plaintiffs have been greatly injured and damaged in the good name and reputation of the Plaintiff Martine Mekni as a physician and Emaco Trading Limited as an honest merchant, all to the damage of the Plaintiffs in the sum of Twenty-five Million ($25,000,000.00) Dollars.

**WHEREFORE**, Plaintiffs demand judgment on each of the causes of action set forth herein in a sum of not less than Twenty-Five Million ($25,000,000.00) Dollars, for attorney fees for the prosecution of this action, for punitive damages in the sum of an additional Twenty-Five Million ($25,000,000.00) Dollars, together with the costs and disbursements of this action.

Dated: January 2, 2018
      New York, New York

RESPECTFULLY SUBMITTED,
THE DWECK LAW FIRM, LLP

JACK S. DWECK (0659)
10 Rockefeller Plaza,
Suite 1015
New York, New York 10020
(212) 687-8200

S:\Secretary 2\Client Docs\Apparel-So Fresh and So Clean LLC\Emaco Complaint (3) 01-02-18.docx